Pigott, J.
(dissenting in part). Vehicle and Traffic Law § 463 (2) (gg) makes it unlawful for any franchisor, regardless of the terms of a franchise contract, “[t]o use an unreasonable, arbitrary or unfair sales or performance standard in determining a franchised motor vehicle dealer’s compliance with a franchise agreement.”* These general and amorphous adjectives “unreasonable,” “arbitrary” and “unfair” are similar to those found in the Uniform Commercial Code and lend themselves to varying interpretations depending on the circumstances of a particular business situation. A performance standard that may be “unreasonable, arbitrary or unfair” as applied to one dealer, in a metropolitan area, may be perfectly reasonable when applied to another in another area of the state. Because in my view a determination concerning the reasonableness, arbitrariness or unfairness of a particular sales performance standard necessarily requires a factual, rather than a legal, determination, I dissent from the majority’s response to the first certified question.
District Court conducted a bench trial over several days and rendered a determination that the RSI performance standard, which uses a statewide sales average adjusted for local conditions, was not unreasonable, arbitrary or unfair. In making that determination, District Court considered and rejected the testimony of Beck’s expert that the standard did not account for brand popularity and import bias, holding that the retail sales index’s (RSI) use of “segmentation” adequately accounted for those particular variables. Crediting the testimony of GM’s *398 two experts, District Court also determined that the RSI standard was “administratively convenient,” “objective,” and “uniformly applied.” That factual determination concerning the performance standard should not be disturbed unless there is no record evidence to support it.
The majority reaches a different factual conclusion, however, stating that “GM’s exclusion of local brand popularity or import bias rendered the [RSI] standard unreasonable and unfair because these preference factors constitute market challenges that impact a dealer’s sales performance differently across the state” (majority op at 391). Putting aside that what constitutes an “unreasonable,” “arbitrary” or “unfair” standard is a factual determination, I do not believe it is this Court’s role or function to determine, as a matter of law, that GM’s failure to include these particular “preference factors” as part of its currently-formulated RSI violated section 463 (2) (gg). We should be mindful that our decision will apply not only to the particular facts in this case, but to all automobile manufacturers and dealerships in this state. Indeed, the Second Circuit acknowledges that GM’s performance standards “appear to represent the industry standard” (787 F3d 663, 676 [2d Cir 2015]).
Contrary to the majority’s subjective conclusion, GM’s use of the RSI with a segmented adjustment does not amount “to GM desiring to rid itself of ineffective dealers in order to increase its brand market share” (majority op at 392) — a fact that we are not empowered to determine. However, if that were GM’s true motive, it would have stuck with the wind-down agreement that Beck signed instead of entering into the participation agreement with Beck instead. Nor would GM have continued working with Beck from 2010 through 2012 to improve Beck’s performance had it been GM’s intention that the Beck dealership fail. It is evident from the record that the RSI is a tool utilized by GM to determine if a franchisee is achieving certain benchmarks, and, if not, the RSI operates as a canary in the coal mine to alert GM that the franchisee needs assistance.
In my view, the majority’s opinion sets a standard that will require other franchisors to follow suit, and, to that extent, its interpretation of section 463 (2) (gg) goes beyond what the legislature intended. Therefore, I dissent.
Chief Judge DiFiore and Judges Abdus-Salaam, Stein and Fahey concur; Judge Pigott dissents in part in an opinion; Judge Garcia taking no part.
*399 Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of Practice of the New York State Court of Appeals, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, first certified question answered in accordance with the opinion herein and second certified question answered in the negative.

 Beck does not claim that GM failed to “communicate the performance standard in writing in a clear and concise manner,” which is also required by section 463 (2) (gg).